**AMP INCORPORATED, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania,**
**Respondent.**

**No. 837 F.R. 1998.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2002.

Decided Oct. 24, 2002.

Publication Ordered Dec. 27, 2002.

———

———

John H. Enos, III and Craig A. Lonyear, Harrisburg, for petitioner.

Bart J. DeLuca, Jr., Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge McGINLEY.

Amp Incorporated (Taxpayer) files exceptions to this Court's February 22, 2002, order affirming the July 20, 1998, order of the Board of Finance and Revenue which found Taxpayer's equipment purchases set forth in Paragraph 19 of the Stipulation of Facts, April 2, 2001, subject to tax.

The facts in this controversy are recounted in this Court's opinion as follows:

Taxpayer manufactures, sells, and distributes solderless electrical/electronic devices and products, such as splicers, connectors, cable and panel assemblies, networking units, sensors, switches, and fiberoptic devices (Product). Stipulations of Fact, April 4, 2001, (Stipulation) 10–11.

Taxpayer's manufacturing plants are located throughout Pennsylvania and Virginia. Stipulation 15. In the 1990's Taxpayer constructed a distribution center (PADC) in Mechanicsburg, Pennsylvania, which receives production output from fifteen of its facilities located in Pennsylvania and Virginia. Stipulation 13, 15, 16.

To operate the PADC, Taxpayer purchased four classes of equipment, which are at issue here: shelving/racks (Shelving/Racks) forklifts/order pickers (Forklifts/Orderpickers); conveyors (Conveyors); and packaging equipment (Packaging Equipment).

Taxpayer uses the Shelving/Racks to house the Product shipped to the PADC from the Pennsylvania and Virginia manufacturing facilities. The Forklifts/Orderpickers move the Product off and on the shelving racks. The Conveyors move the Product in and out of the various PADC departments. Packaging Equipment places manufactured Product into small boxes, self-sealing plastic bags or rigid blister packs or puts small

components into bags according to weight. The Packaging Equipment also forms and seals cartons and shrink-wraps palletized Product. Stipulation 19.

Prior to shipping to the PADC, Taxpayer's Pennsylvania and Virginia manufacturing facilities wrap their Product and place it in cartons for distribution. Stipulation 17. When the PADC receives the Product, the cartons are inspected and weighed. Less than fifty percent of the Product is inspected. Stipulation 20. The Product is stored in anticipation of a customer order. The Product remains at the PADC for an average of five and one-half weeks. Stipulation 21.

In response to a customer order, the Product is withdrawn from inventory. Because customers frequently order the Product in amounts different from the amounts in the cartons, most orders are repackaged and moved to shipping. Repackaging is done in two different ways. When an order calls for the retrieval of the Product, which is bagged in bulk, the bagged Product (which may be in a carton) is removed from storage with the use of Forklift/Order picker. The bag is opened and then the correct amount of Product is placed in a new bag. The rebagged order moves along a conveyor line until placed in a carton and sealed and an address label affixed for shipping. Stipulation 23.

Items are also removed and reboxed if a customer orders a smaller quantity than the amount contained in a carton. When an order requires the opening of a carton, the carton is removed from storage with the Forklift/Order picker, transported to a revolving rack shelving system where the carton is opened manually and an appropriate number of Product removed. The ordered Product is placed in a new carton, which moves along the Conveyor until sealed and a shipping label affixed. Stipulation 23. Approximately eighty-two percent of orders require opening and repackaging of at least one carton. Stipulation 24.

Procedurally, the Pennsylvania Department of Revenue (Department) conducted a sales and use tax audit of Taxpayer for the period from April 1, 1990, to March 31, 1994. As a result the Department assessed a sales tax of $502.00 and a use tax of $1,863,234.00 on Taxpayer's purchase of equipment as well as interest in the amount of $701,667.00 and penalties of $152,381.00 for a total assessment of $2,717,785.00. Stipulation 3. Taxpayer contested the entire tax and petitioned for reassessment and abatement of penalties with the Board of Appeals. The Board of Appeals reduced the use tax to $1,482,663.00 and sustained the sales tax, penalties and interest. Stipulation 4.

On January 20, 1998, Taxpayer contested the entire amount with the Board. The Board sustained the sales tax assessment and reduced the use tax assessment to $1,463,041.00 plus appropriate interest. The Board abated penalties. Stipulation 5.

On May 15, 2001, Taxpayer applied to this Court to supplement the record on appeal to include "Analysis of House Bill 337 (Printer's No. 160) Session of 1957" (Analysis of House Bill 337). The Court allowed the analysis to become part of the record reserving questions as to the evidence's weight sufficiency and materiality to be decided with the merits. Order of Court, June 13, 2001, at 1.[1]

1. Analysis of House Bill 337 written by the Department of Justice of the Commonwealth prior to the passage of the amendment to the Tax Reform Code (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7201, which included the language that manufacture shall include "every operation commencing with the first The Production stage and ending with the completion of personal property having the physical qualities (including packaging, if any passing to the ultimate consumer) ..." concludes "[t]he effect of the proposed amendment would be to exempt all

equipment used for packaging, wrapping, filling, and the material handling equipment incidental to such operations." Analysis of House Bill 337 at 9–11. Taxpayer contends this provided a basis to resolve the instant litigation. This Court disagreed.

*AMP Incorporated v. Commonwealth of Pennsylvania,* 814 A.2d 782–84 (2002).

By order dated February 22, 2002, this Court affirmed the order of the Board which adopted the relief stipulated and agreed to by the parties in accordance with Paragraph 31 of the Stipulation of Facts, and reduced the previously reassessed use tax to $1,186,374.94 and assessed Pennsylvania sales tax at $502.00 plus appropriate interest, subject to the timely filing of exceptions.

Taxpayer excepted and alleged:

1. The Panel erred in concluding that the packaging operations conducted by Petitioner [Taxpayer] at its Pennsylvania Distribution Center (PADC) do not constitute "true manufacturing operations" and therefore, that equipment used at the PADC cannot qualify for the manufacturing exclusion from use tax.

2. The Panel erred in concluding that Petitioner's [Taxpayer] finished goods are not "ultimately consumed" by Petitioner's [Taxpayer] customers, which are themselves manufacturers that buy Petitioner's [Taxpayer] finished goods for use as raw materials in their own manufacturing operations, thereby changing the form, composition and character of Petitioner's [Taxpayer] products.

3. In addressing the scope of the manufacturing exclusion, the Panel erred in its decision not to address the weight, sufficiency and materiality of the "Analysis of House Bill 337," a document published by the Pennsylvania Department of Justice, predecessor to the Office of Attorney General.

These issues were analyzed and disposed of in this Court's opinion in *AMP.* Accordingly, the exceptions to the February 22, 2002, order are dismissed.

### ORDER

AND NOW, this 24th day of October, 2002, the exceptions to the February 22, 2002, order in the above captioned case are dismissed. Judgment shall be entered in favor of the Commonwealth of Pennsylvania in the amount of $1,186,374.94 plus Pennsylvania sales tax reassessment of $502.00 plus appropriate interest.